<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PAUL ROCCIA,                           :
                                       :    Civil Action No. 10-1622 (RMB)
              Petitioner,              :
                                       :
         v.                            :    **OPINION**
                                       :
CRAIG CONWAY, et al.,                  :
                                       :
              Respondents.             :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>              Counsel for Respondents
Paul Roccia                            Warren W. Faulk
ADTC                                         Camden County Prosecutor
8 Production Way                       Jason Magin
Avenel, NJ 07001                             Assistant Prosecutor
                                       Camden Co. Prosecutor's Ofc.
                                       25 North Fifth Street
                                       Camden, New Jersey 08102


**BUMB**, District Judge

     Petitioner Paul Roccia, a prisoner currently confined at the Adult Diagnostic and Treatment Center at Avenel, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Warden Craig Conway and the Attorney General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND[1]

By Camden County Accusation 299-01-04, Petitioner was charged with one count of Aggravated Sexual Assault in violation of N.J.S.A. 2C:14-2a(1).  Petitioner waived indictment.  (Answer, Ex. Ra2.)  Petitioner entered into a plea agreement in which he acknowledged, in a signed writing, among other things, that he understood the charges against him, that he committed the offense to which he was pleading guilty, that the statutory maximum term of imprisonment to which he was exposed was a life sentence, that the prosecutor would recommend a sentence of fifteen years imprisonment, that the prosecutor reserved the right to seek an extended term of confinement, that Petitioner would be sentenced pursuant to the No-Early-Release Act and would be subject to a period of parole ineligibility of twelve years and nine months, that Petitioner waived the right to appeal, that Petitioner was satisfied that the advice he had received from his lawyer, and that Petitioner had no questions concerning the plea.  The plea agreement further specified that Petitioner would be sentenced as a sex offender, that he might be subject to confinement pursuant to civil commitment after he had served his criminal sentence,

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

and that he would be subject to community supervision for life. (Amended Petition, Ex. Da7-Da8; Answer, Exs. Ra3, Ra4, Ra5.)

At the guilty-plea hearing, the trial judge confirmed with Petitioner that he understood that he was giving up certain rights in connection with the guilty plea, including the right of grand jury presentment. In pertinent part, the hearing proceeded as follows:

> THE COURT: Now, you understand the nature of the charge. It's a very serious charge, first degree aggravated sexual assault, and the allegations contained in this one-count accusation allege on diverse dates between January 1st, 2002 and August 29th, 2003, in the Borough of Lindenwold, Camden County, and within the jurisdiction of this Court, you committed acts of sexual penetration on [the minor victim], when [the minor victim] was less than 13 years of age, and it's alleged that you specifically performed fellatio on [the minor victim] and received fellatio from [the minor victim].
>
> Do you understand that charge?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Guilty or not guilty?
>
> THE DEFENDANT: Guilty, sir.
>
> THE COURT: Mr. Mitnick, you may inquire as to the factual.
>
> MR. MITNICK: Paul, I would like to direct your attention from January 1st, 2002 until August 29th of 2003.
>
> I'm going to lead you a little bit here to make it easier.
>
> THE DEFENDANT: Okay

3

MR. MITNICK: Is it correct that during those dates, that the mother of [the minor victim] worked and you had – you basically babysat him during those times, correct?

THE DEFENDANT: Yes.

MR. MITNICK: And during those dates, at times, is it true that for whatever reason, and we won't get into that now, that you, at a point, engaged yourself in behavior, specifically fellatio, on [the minor victim]?

THE DEFENDANT: Yes.

MR. MITNICK: And is it also correct that during those dates, you had [the minor victim] engage in fellatio with you?

THE DEFENDANT: Yes.

MR. MITNICK: And is it also correct that during those dates, you had [the minor victim] engage in fellatio with you?

THE DEFENDANT: Yes.

...

THE COURT: All right.  Now, Mr. Roccia, I understand from speaking with the prosecutor as well as defense attorney that this will not be your first conviction for this type of behavior.

        Do you understand that?  Is that correct?

THE DEFENDANT: Yes.

THE COURT: Now, I want you to also understand that had you gone to trial on this particular charge and been convicted, the likelihood is that you would have received the maximum sentence, which, in this instance, would be 20 years in New Jersey State Prison, 85 ---

MR. MITNICK: Judge, if I may, it's a life sentence --

MR. GILFERT: Persistent offender.

MR. MITNICK: – 63-and-a-half years without parole.

THE COURT: I stand corrected.  The understanding of
both counsel is correct.  Indeed, a life sentence or
close to it because of your prior record.

    Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Instead, the State's offered you 15 years in
New Jersey State Prison, 85 percent parole ineligible
under the No Early Release Act.

    Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Essentially what that means is prior to the
Parole Board even looking at you for parole
consideration, you'll have to serve 12 years, nine
months and three days in the New Jersey State Prison.

    Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And upon your release, you'll also be
subject to a five-year period of parole supervision.

    Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Let me explain to you what that is,
essentially.

    When you reach your parole and if they grant you
parole, you'll be released on this five-year
supervision.  For example, you'll spend one year out on
parole, and if you violated the terms of your parole,
you'll have to spend the balance of that five-year
term, which, in this example, would be our years,
incarcerated.

    Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand you'll be placed on Community Supervision for Life?

You signed a form which tells you what some of the requirements of Community Supervision for Life are, the limitations, and you'll be at least on Community Supervision for Life for 15 years, no less.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It's only after you serve 15 years that you could even see relief from that?

THE DEFENDANT: Yes, sir.

THE COURT: You'll also be subject to DNA testing.

You'll also be subject to Megan's Law classification and notification requirements, and as the forms say, there's a possibility of a civil commitment after you serve out your term, and that civil commitment, if there's an application for civil commitment, will be under the Violent Sex Predator Act.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: There's always that risk as well.  You should also understand that because you committed a crime of this nature, you're subject to payment of an $800 SANE penalty.

Do you understand what that is?

THE DEFENDANT: Yes, sir.

THE COURT: You have to pay a $50 VCB, a $75 Safe Streets, a $30 LEO, you promise not to appeal this conviction, and, in addition, the State's going to dismiss the two warrants that bring you here today out of Lindenwold.

All accurate?

THE DEFENDANT: Yes, sir.

6

MR. MITNICK: If I may, briefly, Paul, when the Judge says you're waiving your right to appeal this conviction, what he's ultimately saying, and I want to explain this again on the record to make sure you understand this, is you have every right to appeal this plea.

THE DEFENDANT: Uh-huh.

MR. MITNICK: However, if you chose to appeal this plea, the Prosecutor's Office then could say I'm taking the offer of 15 years back and I'm going to take you to trial, and if you're convicted, you get life.

So, by waiving your appeal, you're realistically not waiving it if you decided tomorrow morning I don't agree with this for whatever reason, but then Mr. Gilfert could take this back and say we're going to trial.

THE DEFENDANT: I understand.

MR. MITNICK: You understand that fully?

THE DEFENDANT: Yes.

THE COURT: When I get – the last thing I usually ask you about is that particular aspect.

What you've basically done in this plea agreement, you've promised the State you're not going to exercise your right to file an appeal.

THE DEFENDANT: I understand.

THE COURT: If you break that promise, even after sentencing, the State can come back and say set aside the plea agreement, he broke the deal.  If I grant the application, you go to trial on the original charge. If convicted, you could potentially leave the door open to that life sentence.

Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: All right.  I've talked to you about the terms of the plea agreement.  Are those the terms that you agree to by pleading guilty today?

THE DEFENDANT: Yes, sir.

THE COURT: Are the terms of that agreement accurately set forth in the plea papers that you and Mr. Mitnick have completed?

THE DEFENDANT: Yes, sir.

THE COURT: Did you read everything in those papers and understand everything?

THE DEFENDANT: Yes.

THE COURT: Did you agree with everything circled and filled in?

THE DEFENDANT: Yes, sir.

THE COURT: Then you signed and initialed the forms signifying your agreement, right?

THE DEFENDANT: Yes.

THE COURT: Safe to say if I took the time and asked you every single question on the papers, the answers in court would be the same as circled and filled in, right?

THE DEFENDANT: Yes, sir.

THE COURT: Not only have you waived your right of indictment that we talked about at the beginning of this proceeding, but other rights.

     You've waived your right to a trial by jury on these charges, your right to remain silent and not have that silence used against you, the presumption of innocence, and, lastly, you've waived your right to confrontation.

     What that essentially means is the State would have to produce all the witnesses that would testify against you, including [the minor victim].  You would

8

have a right, through your attorney, to cross-examine
those witnesses.  You've given up that right as well.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, have you given up the rights that we've
just talked about, entered your guilty plea and
accepted this plea offer – have you done this all today
freely, knowingly and voluntarily?

THE DEFENDANT: Yes, sir.

...

THE COURT: We don't know as you sit here today whether
or not you will, in fact, qualify to be sentenced under
the Sex Offender Act.

        Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Also, as Mr. Mitnick pointed out when I was
going over the terms of the plea agreement, you've
promised not to file an appeal as part of that plea
agreement.  If you break that promise, as we've talked
about, the State always has a right to come to me and
ask me to set aside the plea agreement.  If that
happens, you go to trial on the original charge and if
convicted, possibly, in fact probably, you could
receive a more substantial sentence if you're
convicted.

        Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions?

THE DEFENDANT: No, sir.

MR. MITNICK: Judge, may I just supplement the record?

THE COURT: Yes.

9

MR. MITNICK: Paul, we have discussed this many times, correct?

THE DEFENDANT: Yes, sir.

MR. MITNICK: Okay.  Have you understood everything I've explained to you with the waiver of your rights, your right to go to trial, your right to confront [the minor victim] or whoever else?

THE DEFENDANT: Uh-huh.

MR. MITNICK: Have I explained this to you?

THE DEFENDANT: Yes.

MR. MITNICK: All of it?

THE DEFENDANT: Yes.

MR. MITNICK: I understand that anyone in your shoes may not be happy about serving 85 percent of 15 years, but are you taking this plea voluntarily?

THE DEFENDANT: Yes, sir.

MR. MITNICK: Has anyone forced you into this plea?

THE DEFENDANT: Oh, no. No.

MR. MITNICK: Do you understand that your exposure, as the Judge explained, is life, 63-and-some-odd years without parole?

THE DEFENDANT: Uh-huh.

MR. MITNICK: And you understand fully you are taking this plea?

THE DEFENDANT: Yes.

MR. MITNICK: And you are taking this plea because I've asked you to take this plea or because you are guilty and you understand –

THE DEFENDANT: I understand.

MR. MITNICK: What do you understand?  Can you tell us that?  If you went to trial, what could you receive?

THE DEFENDANT: I could receive life in jail.

MR. MITNICK: Okay.  This is totally voluntary?

THE DEFENDANT: Yes.

MR. MITNICK: You are under no medications today that have clouded your mind, are you?

THE DEFENDANT: No.

MR. MITNICK: Okay.  And you've had a very ample amount of time to think about this plea, is this correct?

THE DEFENDANT: Yes.

MR. MITNICK: The last time you and I met was several weeks ago in the jail and you agreed at that point, correct?

THE DEFENDANT: Yes.

MR. MITNICK: And have you thought about it over the course of the last several weeks?

THE DEFENDANT: Yes.

MR. MITNICK: Again, today, it is voluntary, and you completely understand all of your rights, your waiver of rights, the law, and you understand what you have done?

THE DEFENDANT: Yes.

(Tr. of Guilty Plea at 5-19  (Jan. 22, 2004).)

Prior to sentencing, Petitioner was evaluated at the Adult Diagnostic and Treatment Center.  The report of the examination reflected Petitioner's report of childhood sexual abuse by an

adult male neighbor.[2]  The report reflected Petitioner's
admission of having sexually abused, several years earlier, an
eight-year-old child, of having received treatment for that
offense, as well as Petitioner's admission of the current charged
conduct of having, on several occasions, sexually abused a three-
year-old child.  The report reflected the examiner's opinion that
Petitioner's conduct was repetitive and compulsive, that
Petitioner might respond to treatment, and that Petitioner was
eligible for sentencing under the purview of the New Jersey Sex
Offender Act, N.J.S.A. 2C:47-1, et seq.

     Also prior to sentencing, Petitioner's counsel advised the
court by letter of certain concerns that had developed in
connection with his representation of Petitioner, as follows:

> As per my conversation with you and Prosecutor
> Howard Gilford in chambers this morning, please allow
> this letter to reflect my position with regard to my
> current client, Paul Roccia.
>
> As Paul Roccia's pre-sentence report reflects,
> this defendant plead guilty to one county of aggravated
> sexual assault under Accusation No: A-00299-01-04 on
> January 22, 2004.  Sentencing was originally scheduled
> for April 2, 2004.  Prior to that sentence date, I
> visited Mr. Roccia in the Camden County Correctional
> Facility.  During that visit, he advised me that he did
> not recall me ever reading to him his rights under the
> written plea agreement nor did he believe that all of
> the reporting in accordance with Megan's Law should be
> applicable to him.  The tenor of that meeting was such
> that I did not feel comfortable having Mr. Roccia
> sentenced until he advised me that he fully understood

---

     [2] This information was also presented to the state court in
the Pre-Sentence Report, filed here under seal.

everything that had transpired in the courtroom on the date of his plea on January 22, 2004.

Immediately after my meeting that day with Mr. Roccia, I contacted Your Honor's chambers along with Mr. Gilford advising of my discussion with Mr. Roccia and also ordered a written transcript of the plea so that Mr. Roccia could review each and every word spoken in the courtroom.   Sentencing was rescheduled for Friday, April 16, 2004.

This morning, Thursday, April 15, 2004, I again went to see Mr. Roccia to answer any and all questions he might have pertaining to the transcript I had provided to him.  He advised me that he believed I did not do my job with regard to getting him an appropriate plea bargain in his case.  He further advised that the plea bargain he entered into was, in his opinion, far too harsh, however, he had to accept it given the fact that he faced life in prison.

He further went on to say that I have kept him in the dark throughout my representation of him and he has never understood my thinking, including why his prior record has any effect on him today due to the fact that he was already punished for that and received probation.  He believes he is not a persistent offender.  He again reiterated to me that he recalls no questions pertaining to his rights during the plea.  He also drew my attention to Page 8 of the guilty plea transcript where the Court advised Mr. Roccia he would have to serve 12 years, 9 months and 3 days in New Jersey State Prison before being eligible for parole. He advised me that he has a specific recollection of the Court, the Prosecutor and me advising him that it was 11 years, months and 3 days, and that the transcript was flawed.

After all of these discussions this morning, I advised him that I was not comfortable allowing him to be sentenced when he did not believe that the plea was voluntary.  His response to me was that if I continued the sentencing, all I will do is "fuck" him a second time.

As the pre-sentence report should reflect, Mr. Roccia is a persistent offender and faced life/63-1/2 years before my negotiations with the prosecutor's

13

office began.   The negotiations between Prosecutor
Howard Gilford and me took place over a several month
period and were extensive in nature.

Please allow this letter to confirm that I will be
asking the Public Defender's Office to review my file
and meet with Mr. Roccia independently before this
matter is either sentenced or a motion is made to
withdraw Mr. Roccia's plea.  Unless Mr. Roccia gives a
full factual statement to the Court that he understands
his rights, his plea deal and his maximum exposure, I
will ask to be removed from the case since I do not
believe it would be in the client's best interest for
me to continue my representation.

Lastly, it is my understanding that sentencing has
been rescheduled to May 7, 2004.

(Amended Petition, Ex. Da78-79.)   Sentencing took place on May

7, 2004.

THE COURT: ... Mr. Gilfert is here on behalf of the
State.  Mr. D'Aversa is here on behalf of Mr. Mitnick's
office for Mr. Roccia.

Mr. Roccia's last sentencing date was carried so
that Mr. Roccia could satisfy some questions that he
had.  I understand not only has he spoken with Mr.
D'Aversa, but he's also spoken with the Public
Defender's Office, specifically Mr. Lytle, and he's had
his questions answered.

The one question that was told to me was a
question as to where he would be serving his time.

The record will reflect that Mr. Roccia should
have the documents in hand that would indicate on
February 27th, a report was generated from the Adult
Diagnostic and Treatment Facility commonly called
Avenel and that he qualified to be sentenced under the
New Jersey Sex Offender's Statute, which means that he
will be serving his time at the Adult Diagnostic and
Treatment Facility.

There was also a question raised at sidebar as to
the parole disqualifier involved.

14

As you know, at the time you took the original plea, you were subject to an 85 percent parole disqualifier, which essentially is, on a 15-year sentence – I think that's what it was – would be 12 years, nine months and three days, and upon your release, you would be subject to a five-year period of parole supervision. ...

I know those were two concerns you expressed. Counsel made a point of bringing that to my attention and hopefully I've addressed those problems.

THE DEFENDANT: Yes.

THE COURT: Before I come back to you, I want to hear from Mr. Gilfert.

MR. GILFERT: The State moves for sentence in accordance with the agreement, Judge.

I note that Mr. Mitnick did a good job for his client in this case.  At his request, I came down on the plea offer from 20 years to 15.
Also at Mr. Mitnick's request, I met with the defendant's mother, his sister and brother-in-law, and if I'm not mistaken the defendant's sister is in court today supporting him.

So, I don't want him to be under the misapprehension that his attorney didn't do a good job advocating his side in this case.  He certainly did that, Judge.

With that, I would move for sentence in accordance with the plea agreement.

THE COURT: He's actually done an admirable job for you.  These are not easy cases for anybody. ...

...

Getting back to why I even began this discussion, as to whether or not Mr. Mitnick did a good job for you, absolutely he did.  If you went to trial and lost a case like this, again, I don't punish people for going to trial, but lots of variables, lots of details comes out, and it doesn't color my ability to be fair

and reasonable, all it does is enlightens me and places a further emphasis on the need for deterrence.

I think this is a fair way to resolve it.

THE DEFENDANT: I never had a problem with the work that he done. The questions that needed to be answered, he wasn't there to answer them at the time.

THE COURT: But you got them answered now.

THE DEFENDANT: Yeah.

THE COURT: Thanks to Mr. D'Aversa, thanks to Mr. Lytle, and thanks in part to Mr. Mitnick as well, right?

THE DEFENDANT: Yes.

THE COURT: Mr. D'Aversa?

[MR. D'AVERSA]: Joseph D'Aversa on behalf of Paul Roccia.

I had an opportunity to review the presentence report. I also had an opportunity to review it with Mr. Roccia, as well as Mr. Lytle, and it was explained to me that Mr. Lytle went over the presentence report with Mr. Roccia in detail and explained to him, again, the – reiterating some of what you said, explained to him exactly what - what the terms of the plea agreement were to make sure that he understood the terms of the plea agreement.

It's my understanding that he does understand the terms of the plea agreement as per his conversation with Mr. Lytle and he wishes to go through with the plea as - as presently constituted.

I, again, had an opportunity to speak with Mr. Lytle. He explained to me all of this, that he thoroughly discussed this with Mr. Roccia. I'm comfortable with that.

THE COURT: Mr. Roccia, we've had more discussion than I normally have with a defendant prior to this part of the proceeding.

Is there anything else we need to discuss before I pass sentence?

THE DEFENDANT: No, sir.

THE COURT: ...  The aggravating factors in this instance are:

Three, the risk that you'll commit another crime; six, the extent of your prior record and the seriousness of the offenses of which you've been convicted; and nine, the need for deterrence.

On the mitigating side, there are no mitigating factors. ...

I'm going to sentence you in accordance with the plea agreement because, one, it satisfies the interest of justice, and, two it avoids the retraumatization of the victim. ...

Finally, you also have a legal right to file an appeal.  Although in the plea agreement you said you were not going to exercise that right, you still have a right of appeal and that runs 45 days from today.

If you can't afford an attorney, make application and one will be appointed for you.

Good luck.

[MR. D'AVERSA]: Judge, I don't know if I mentioned this earlier, but in speaking to Mr. Lytle today, it's my understanding that Mr. Roccia went over the presentence report prior to today very thoroughly and understood everything.  I went over it with him today.  I said this is the presentence report.  He said I went over this with Mr. Lytle already.  Mr. Mitnick already sent me a copy as well.

THE COURT: So, you went over that and there were no additions or corrections?

THE DEFENDANT: Oh, no, no, no.

THE COURT: Okay.  Good luck to you.

(Tr. of Sentencing at 1-12 (May 7, 2004).)

17

Petitioner did not file a direct appeal.  Instead, he filed a state petition for post-conviction relief, asserting that his trial counsel had failed to provide constitutionally effective counsel, that the trial court had failed to ensure that his plea was voluntary, and that his sentence was excessive.  Following a non-evidentiary hearing, the trial court denied the petition, finding all claims except the ineffective assistance claim procedurally barred.  On July 1, 2009, the Superior Court of New Jersey, Appellate Division, affirmed the denial of relief. (Answer, Ex. Ra25.)  On November 4, 2009, the Supreme Court of New Jersey denied certification.  (Answer, Ex. Ra31.)  This Petition followed.

Here, Petitioner asserts the following grounds for relief: (1) ineffective assistance of trail counsel, in connection with trial preparation, plea negotiations, and sentencing, (2) the trial court failed to ensure that Petitioner's plea was knowing and voluntary, and (3) excessive sentence.  This matter is now ready for decision.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State

18

court only on the ground that he is in custody in
violation of the Constitution or laws or treaties of
the United States.

With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the

adjudication of the claim

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,

for the Court, Part II).  A state court decision "involve[s] an

unreasonable application" of federal law "if the state court

identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the

particular state prisoner's case," and may involve an

"unreasonable application" of federal law "if the state court

either unreasonably extends a legal principle from [the Supreme

19

Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). <u>Id.</u> at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. <u>Id.</u> at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. <u>Matteo v. Superintendent</u>, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. <u>Chadwick v. Janecka</u>, 302 F.3d 107, 116 (3d Cir. 2002) (<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. <u>See</u> <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). <u>See also</u> <u>Schoenberger v. Russell</u>, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d

Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)).  "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 581 F.3d q158, 165 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of

tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);

Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),

cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

### A.  Ineffective Assistance of Counsel

Petitioner asserts that he was deprived of his

constitutional right to effective assistance of counsel in the

following ways: (1) counsel allegedly failed to investigate and

present to the prosecutor mitigating evidence regarding

Petitioner's sexual molestation as a child; (2) counsel allegedly

coerced Petitioner into accepting the plea agreement; (3) counsel

allegedly failed to preserve Petitioner's right to direct appeal

when he negotiated the plea agreement, which Petitioner contends

rendered the sentence illegal; and (4) counsel failed to present

mitigating factors to the sentencing court or otherwise to

petition the court to grant Petitioner the right to speak and

present mitigating factors to the court.

The state PCR court and Appellate Division rejected these

claims.

> The trial court rejected all of these contentions,
> noting that in light of defendant's prior conviction
> for sexual assault, his exposure, if convicted, was
> substantial.  He reasoned that under these
> circumstances, the plea negotiated by his attorney was
> generous.
>
> ...

22

Addressing the ineffective assistance of counsel claims under the two-prong <u>strickland</u>/<u>Fritz</u>[fn1] test, the court found that there was nothing in the record demonstrating that trial counsel's "performance was so deficient that he was not functioning as counsel ... ." The court noted that at sentencing, the prosecutor represented to the court that the initial discussions contemplated a twenty-year sentence,which defense counsel, through negotiations, was able to persuade the State to reduce to a fifteen-year custodial term recommendation.  As to the second prong, the court did not agree that the psychological evaluation prepared on defendant's behalf by Dr. Philip H. Witt, Ph.D., would have resulted in a further reduction of defendant's sentence:

> [fn1] <u>Strickland v. Washingtn</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); <u>State v Fritz</u>, 205 N.J. 42, 52-58 (1987).

Defendant argues that armed with this additional information and presented with a heartfelt appeal by trial counsel, the [j]udge would have been persuaded that mitigating factors existed which would have tipped the balance of aggravating and mitigating factors so drastically in his favor that the [j]udge would have, within a reasonable probability, departed from the negotiated plea agreement.

Defendant suggests that the [j]udge would have found Mitigating Factor 2, that the defendant never contemplated his conduct would cause or threaten serious harm, and Mitigating [Factor] 4, that there were grounds tending to justify the defendant's conduct, though failing to establish a defense.

It would appear that a defendant who commits a second sexual assault after receiving treatment for his illness would be well aware that his conduct would cause serious harm.  Just as clearly, prior abuse is not a justification for abusing others, and so, under the two prongs of <u>Strickland</u>, trial counsel's decision not to argue for a downward departure from the plea agreement was not deficient at all, but a realistic

23

assessment of the circumstances and two, having argued these matters to the [j]udge, there would not have been a reasonable probability, I conclude, that Mr. Roccia would have been successful.

Finally, the court found defendant's claim that the full penalties to which he would be exposed as a result of the plea were not fully explained to him, was "clearly false."  The court noted that defendant's exposure was "explained to him by his attorney.  They were set forth in the plea papers he signed, and most importantly, by the [j]udge at time of taking his plea."  The court concluded that defendant failed to establish a prima facie case for post-conviction relief based upon ineffective assistance of counsel and that his claims were otherwise procedurally barred.

...

[W]e affirm substantially for the reasons expressed by Judge Frederick J. Schuck in his thorough and well-reasoned oral opinion of June 22, 2007.  Nonetheless, we add the following comments.

...

Further, defendant's claims related to ineffective assistance of his trial counsel are completely unsupported by the record.  At the time defendant entered his guilty plea, he expressed satisfaction with the services provided on his behalf by trial counsel and acknowledged that his attorney had satisfactorily answered all of his questions.  Additionally, although an associate appeared on defendant's behalf at sentencing due to the unavailability of his trial counsel, defendant advised the court that additional questions for which he sought answers were answered by trial counsel's associate as well as by the Public Defender.

Thus, Judge Schuck properly found defendant failed to establish a prima facie case for post-conviction relief based upon ineffective assistance of counsel.

(Opinion of Appellate Division at 2-5, 6, 8-9 (July 1, 2009).)

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." <u>Id.</u> at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Strickland two-part standard applies to ineffective-assistance claims arising out of the guilty plea process.  Hill v. Lockhart, 474 U.S. 52, 57-9 (1985).  In the context of guilty pleas, the first element of the Strickland test remains "nothing more than a restatement of the standard of attorney competence." Hill, 474 U.S. at 58.  The "prejudice" requirement, "on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that,

26

but for counsel's errors, he would not have pleaded guilty and
would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

Here, Petitioner has failed utterly to establish either
deficient performance or prejudice.  While there clearly was some
tension in this attorney-client relationship, that tension does
not equate to ineffective assistance.  To the contrary, counsel
here went to extraordinary lengths to protect Petitioner's rights
despite that tension, by ordering a transcript of the plea
hearing for Petitioner's review, by obtaining continuances of the
sentencing to permit Petitioner to obtain answers to his
questions, by arranging for a second attorney from the Office of
the Public Defender to review the plea agreement with Petitioner.
Petitioner's counsel negotiated a lesser sentence than that
offered by the prosecutor.[3]  The trial court was aware of
Petitioner's childhood sexual abuse by virtue of the Pre-Sentence
Report and the Avenel evaluation and, as noted by the PCR court,
it is unlikely that any further reference to that fact by counsel
would have altered the sentence.  There was nothing to suggest
that the waiver of appeal rights was inappropriate.

The state courts correctly identified and applied the
<u>Strickland</u> standard.  The decision of the state courts is neither

---

[3] The Court notes that the prosecutor advised the court that
even the mother of the victim had asked for a lesser sentence
than provided for by the plea agreement and the prosecutor had
refused.  Thus, there is nothing to suggest that counsel could
have negotiated any further reduction.

27

contrary to nor an unreasonable application of controlling Supreme Court law, nor are the state court factual determinations unreasonable in light of the evidence presented.  Petitioner is not entitled to relief on this claim.

B.  <u>Voluntariness of Guilty Plea</u>

Petitioner alleges that the trial court failed to take appropriate measures to ensure that his plea was not entered knowingly and voluntarily, as the court had been notified by defense counsel that Petitioner believed the plea to be involuntary.  The PCR court, affirmed by the Appellate Division, rejected this claim, noting that petitioner's exposure was explained to him by his attorney and by the judge in open court.

Due process requires that guilty pleas be entered intelligently and voluntarily.  <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).  A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  <u>Bousley v. United States</u>, 523 U.S. 614, 618 (1998) (quoting <u>Smith v. O'Grady</u>, 312 U.S. 329, 334 (1941).  Where, prior to pleading guilty, a defendant is provided with a copy of the indictment which recites the charge against him, [s]uch circumstances, standing alone, give rise to a presumption that the defendant was informed of the nature of the charge against him."  <u>Id.</u> (citation omitted).  A

28

guilty plea entered by one fully aware of the direct consequences
of the plea is voluntary "'unless induced by threats (or promises
to discontinue improper harassment), misrepresentation (including
unfulfilled or unfulfillable promises), or perhaps by promises
that are by their nature improper as having no proper
relationship to the prosecutor's business (e.g. bribes).'"  Brady
v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v.
United States, 246 F.2d 571, 572 n.2 (5th Cir. 1956) (en banc),
rev'd on confession of error on other grounds, 356 U.S. 26
(1958)).  The Court of Appeals for the Third Circuit has held
that the only direct consequences relevant to evaluating the
voluntariness of a guilty plea are the maximum prison term and
fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d
110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996),
superseded by statute on other grounds as stated in Dickerson v.
Vaughn, 90 F.3d 87 (3d Cir. 1996).

Whether a guilty plea was entered intelligently and
voluntarily is primarily a question of law subject to de novo
review; to the extent that determination depends upon findings of
historical fact by the state court, however, those factual
findings carry a presumption of correctness.  See Marshall v.
Lonberger, 459 U.S. 422, 431-32 (1983); Candelaria v. Lemaster,
201 F.3d 447 (10th Cir. 1999) (Table, text in Westlaw); Hunt v.

29

<u>Dailey</u>, 54 F.Supp.2d 1038, 1041-42 (D.Kan. 1999) (collecting cases).

Most courts look to the totality of events and circumstances preceding entry of a guilty plea in determining whether the defendant was informed and understood the nature of the charge. Some of the factors to be considered include: (1) the complexity of the charge; (2) defendant's age; (3) defendant's record; (4) defendant's intelligence and education; (5) defendant's ability to comprehend what was being said to him; and (6) whether he was represented by counsel. <u>See</u> <u>United States v. Cefaratti</u>, 221 F.3d 502, 508 (3d Cir. 2000); <u>United States v. Fernandez</u>, 205 F.3d 1020, 1025 (7th Cir. 2000); <u>United States v. Mosley</u>, 173 F.3d 1318, 1322-23 (11th Cir. 1999); <u>United States v. Marks</u>, 38 F.3d 1009, 1012 (8th Cir. 1994).

Here, Petitioner was repeatedly advised of the nature of the charges against him, his rights with respect to those charges, and the consequences of pleading guilty. Petitioner signed several detailed forms in connection with his plea agreement; he was advised of the applicable information in open court; he was asked by the trial judge if he had any questions; when questions arose after the plea hearing, but before sentencing, his counsel advised the court and arranged for a second attorney from the Office of the Public Defender to review the plea agreement with Petitioner; at sentencing, which had been continued so that he

30

could obtain answers to his various questions, Petitioner was asked and advised the trial court that he had no more questions. There is no evidence that Petitioner's plea was anything but knowing and voluntary.  Indeed, the evidence is convincingly to the contrary.  Petitioner is not entitled to relief on this claim.

C.   Excessive Sentence

Petitioner asserts that his sentence was excessive, as evidenced by lesser sentences imposed on other sex offenders.  In particular, Petitioner asserts that he should not have been sentenced under the No Early Release Act and that the sentencing court should have taken into account the fact that Petitioner was sexually molested as a child.  Moreover, Petitioner contends that his harsh sentence counteracts advances in psychological treatment with respect to sex offenders.

The Appellate Division found this claim procedurally barred, as Petitioner had not raised it on direct appeal, but also addressed the claim on the merits.

> "Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Afanador, 151 N.J. 41, 49 (1997). "It is a safeguard for ensuring that a defendant was not unjustly convicted." Ibid.  While post-conviction relief exists in order to provide a forum for raising issues that a petitioner could not raise on direct appeal, it is not a substitute for direct appeal.  R. 3:22-3; Afanador, supra, 151 N.J. at 50.  To reinforce this principle, Rule 3:22-2 delineates the grounds upon which relief may be sought.  Rule 3:22-4 bars, except in narrowly

31

defined circumstances, asserting grounds for relief that could have been raised on direct appeal.

Ordinarily, absent egregious circumstances, a claim of an excessive sentence for a "'sentence otherwise within authorized limits, as distinct from illegality by reason of being beyond or not in accordance with legal authorization, is not an appropriate ground for post-conviction relief and can only be raised on direct appeal from the conviction.'" Flores, supra, 228 N.J. Super. at 592 (quoting State v. Clark, 65 N.J. 426, 437 (1974)). Defendant was charged with first-degree aggravated sexual assault. It is undisputed that had he gone to trial and been convicted, he was eligible for sentencing as a persistent offender. See N.J.S.A. 2C:47-3. Based upon his prior record, defendant faced a life sentence with at least a sixty-three-year period of parole ineligibility. Under these circumstances, we are in complete agreement with Judge Schuck's conclusion that the plea offer extended to defendant was generous. We see no egregious circumstances present here that warrant relaxation of the general rule that claims of excessive sentence be addressed on direct appeal.

(Opinion of Appellate Division at 6-8 (July 1, 2009).)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984). See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" <u>Ewing v. California</u>, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment:  "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." <u>Solem v. Helm</u>, 463 U.S. 277, 292 (1983).  More recently, Justice Kennedy has explained that <u>Solem</u> does not mandate comparative analysis within and between jurisdictions, <u>see</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review--"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"--that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," <u>id.</u> at 1001 (citation omitted) <u>quoted with approval in</u> <u>Ewing</u>, 538 U.S. at 23.

33

Here, Petitioner has failed to establish that his sentence, which the state courts characterized as "generous," was grossly disproportionate to the crime.  The state court decisions are neither contrary to nor an unreasonable application of controlling Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to demonstrate that jurists of reason could disagree with this Court's resolution of his constitutional claims or could conclude that the issues presented are adequate to proceed further.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be

denied.  An appropriate order follows.


<u>s/Renée Marie Bumb</u>
Renée Marie Bumb
United States District Judge

Dated:<u> August 19, 2011</u>